UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ROBERTO LIMON,

    Plaintiff,

v.                                         Case No. 1:13-CV-939

MARATHON PETROLEUM             HON. GORDON J. QUIST
COMPANY, LP,

    Defendant.

_____/

## OPINION

Plaintiff, Roberto Limon, has sued his former employer, Marathon Petroleum Company, LP (MPC), alleging that it discriminated and retaliated against him based on his disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*[1] MPC has moved for summary judgment on both claims. The Court heard oral argument on the motion on April 29, 2015 and has reviewed the parties briefs and exhibits.

For the foregoing reasons, the Court will grant MPC's motion and dismiss Limon's ADA claims with prejudice.

### I. BACKGROUND

Limon was employed as an Operator at MPC's terminal in Niles, Michigan between September 2000 and January 2013. (Dkt. # 17 at Page ID#60.) Limon worked on the light products side of the terminal. (Dkt. # 28-2 at Page ID#164.) Limon reported to the Terminal Manager. Joe Williams served as the Terminal Manager from May 2012 through the date of Limon's termination. (*Id.* at Page ID#166.) Limon's duties as an Operator included operating the valves inside the

---

[1] The Court previously dismissed Limon's claims under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, *et seq.* and the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161, *et seq.*, based on Limon's express waiver of those claims.

terminal to accept product from the pipeline or to dispense it to tankers, tracking inventories, gauging tanks, performing general maintenance, repairing the load rack, training new drivers, and preparing terminal reports. (Dkt. # 28-3 at Page ID#225.)

In 2010, MPC learned that Limon had been falling asleep at work. MPC placed Limon on paid medical leave until Limon could follow up with his doctor and obtain a release to work. (Dkt. # 28-5 at Page ID#260.) Limon's doctor subsequently informed MPC that Limon had been diagnosed with obstructive sleep apnea. Limon remained on paid medical leave until February 13, 2011, and then returned to work with restrictions. MPC accommodated Limon's restrictions, but eventually placed Limon back on paid medical leave pending the results from a CPAP machine study by Limon's doctor. (Dkt. # 28-2 at Page ID#184.) In July 2011, Limon returned to work without any restrictions, and after that time, did not report any further problems to MPC regarding staying awake on the job.

During Limon's employment with MPC, MPC maintained progressive disciplinary procedures that were "approved and distributed as guidelines and recommendations only." (Dkt. # 28-17 at Page ID##301–02, 304, 307.) Those procedures included: (1) written warning I (active for 18 months); (2) written warning II (active for 24 months); (3) 1-day suspension/final warning (active for 24 months); and (4) termination. (Dkt. # 28-17 at Page ID#304.) Limon received a written warning I on March 2, 2012, and he received a written warning II on June 23, 2012. (Dkt. # 28-26 at Page ID#349, ¶ 6; Dkt. # 28-29; Dkt. # 28-30 at Page ID#373.)

On January 8, 2013, Limon went to Williams's office to talk about the medications he was taking to help him stay awake. Williams told Limon that Limon should not be discussing his medical condition with Williams, but Limon continued talking. Limon said that his medicine costs him $1,700 per month and that, without it, he could not work and fully function without falling

asleep. Limon sought Williams's advice on the situation and inquired whether MPC could pay for the medication. Williams told Limon that he would contact Ian Sparkman, a representative from MPC's Human Resources Department, and request that he meet with Limon in Niles in the near future to discuss Limon's situation. (Dkt. # 31-5 at Page ID#464.)

On January 11, 2013, Williams and Sparkman met with Limon to ask him about incidents that occurred on January 8 and January 10, 2013. On January 8, 2013, Limon received a report via MAPLINE[2] from an MPC driver regarding an ethanol spill at the terminal. Limon failed to contact Williams about the MAPLINE call, as Williams had previously instructed Limon to do whenever he received a MAPLINE call, or to go to the terminal to personally investigate the spill. (Dkt. # 28-2 at Page ID##203–04.) On January 10, 2013, Limon climbed on top of a truck that had broken down under the loading rack, without either using a portable truck ladder or first completing transport hazard checklist before climbing the ladder on the truck, as required by MPC policy. (*Id.* at Page ID##205–06.) After checking the truck's tank level, Limon left the truck under the loading rack, even though there was no Operator present to write a work permit so that the truck could be safely repaired and removed. (*Id.* at Page ID#207.) The following day, Williams caught Limon attempting to complete a transport hazard checklist after the fact, which MPC considered a falsification of records. (Dkt. # 28-32.) At the end of the January 11 meeting, Williams and Sparkman told Limon to go home and they would call him after completing their investigation. (*Id.* at Page ID#208.)

On January 17, 2013, Williams and Sparkman met with Limon and notified him that he would receive a final warning for the January 8 incident and that his employment would be terminated for the January 10 incident. (*Id.* at Page ID#208.)

---

[2]MAPLINE is a toll free phone number that MPC employees are required to call when there is an emergency. (Dkt. # 28-2 at Page ID#203.)

## II. ANALYSIS[3]

### A. Limon Failed to Exhaust his Retaliation Claim

In his amended complaint, Limon alleged that MPC retaliated against him "for his complaints of disability discrimination in his employment." (Dkt. # 17 at Page ID#62, ¶ 20.) This claim was based on prior charges that Limon filed with the Equal Employment Opportunity Commission (EEOC) on June 1, 2011, October 13, 2011, and February 2, 2011. Limon has abandoned this theory of retaliation and now alleges that MPC retaliated against him because he requested an accommodation in his January 3, 2013 conversation with Williams. Limon cannot proceed with such a claim because he failed to exhaust it with the EEOC.

Before filing a lawsuit, an ADA plaintiff must exhaust his remedies by filing a charge with the EEOC. 42 U.S.C. § 12117(a); *see also Pary v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Exhaustion is a condition precedent to filing suit rather than a limitation on a federal court's jurisdiction over ADA claims. *Id.* at 309. In order to properly exhaust a claim with the EEOC, the claimant must explicitly set forth the claim in the EEOC charge or the claim must "reasonably be expected to grow out of the EEOC charge." *Jones v. Sumser Retirement Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) (internal quotation marks omitted); *accord Jenkins v. Foot Locker Inc.*, 598 F. App'x 346, 349 (6th Cir. 2015). The complainant is not required to use precise legal terms or attach the correct legal conclusion to his allegations, but he must still file a charge on the claim before suing in federal court. *Id.* Thus, "[t]he claim must grow out of the investigation or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim." *Id.*; *see also Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (stating that 'where facts related with respect to the charged claim

---

[3] The parties are familiar with the well-know standard for deciding summary judgment motions and the Court need not recite it here.

would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim"). A court reviewing the scope of an EEOC charge should give the charge a broad reading–even in cases were the claimant was represented by counsel. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001).

Limon's original and amended charges of discrimination referenced the previous charges that he filed with the EEOC in 2011 as the basis for his retaliation claim, but he did not mention, even implicitly, the January 3, 2013 meeting with Williams as a basis for any of his charges. Limon's allegations that MPC retaliated against him for filing prior EEOC charges would not have alerted either the EEOC or MPC that Limon was alleging retaliation based on his January 3, 2013 meeting with Williams. In addition, there is no reason to believe that such a charge would have grown out of the EEOC's investigation of the facts Limon alleged in his charge because the January 3, 2013 conversation was totally unrelated to Limon's 2011 charges. Contrary to Limon's assertion, Limon's statement in his amended charge that MPC was aware of his ongoing medical issues provides no basis to conclude that the EEOC would have discovered Limon's claim in the course of its investigation. Such a discovery might have been fortuitous, but it would not "reasonably be expected to grow out of the EEOC charge." *Jones*, 209 F.3d at 853.

The fact that Limon checked the "retaliation" box on the charge form is not determinative of the exhaustion issue. For this reason, Limon's reliance on *Spengler v. Worthington Cylinders*, 615 F.3d 481 (6th Cir. 2010), is misplaced. The plaintiff in *Spengler* did not check the retaliation box on the EEOC complaint form, but the court concluded that his allegations were sufficient to put the EEOC on notice of the retaliation claim because the plaintiff alleged that after the plant manager met with the plaintiff's supervisor to discuss the plaintiff's concerns about the supervisor's age-related comments, the supervisor's demeanor toward the plaintiff changed and the supervisor, alone,

5

determined that the plaintiff should be terminated. *Id.* at 490. There are no similar allegations in the instant case that would have apprised the EEOC that Limon was relying on the January 3, 2013 conversation with Williams for his retaliation claim.

**B.  Limon's Discrimination Claim Fails for Lack of Evidence of Pretext**

The Court concludes that Limon has established a prima facie case of disability discrimination, that is, he has shown that (1) he is disabled or regarded as such by MPC, (2) he is otherwise qualified to perform the essential functions of his position, with or without accommodation, and (3) his termination of his employment was causally related to his disability.[4] *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). However, Limon cannot show that MPC's proffered legitimate reason for terminating his employment was pretext. To carry this burden, Limon must "identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008). Limon can establish pretext "by offering evidence that [MPC's] proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805–06 (6th Cir. 1998). Limon has offered no such evidence.

Instead of rebutting MPC's stated reasons for having terminated him, Limon asserts that the temporal proximity between his January 3, 2013 meeting with Williams and MPC's decision to terminate his employment, as well as MPC's failure to follow its own progressive discipline policy, constitute evidence of pretext. Neither argument establishes pretext, and Limon's temporal

---

[4]MPC concedes, for purposes of this motion, that Limon is disabled or that MPC regarded him as disabled. Although MPC asserts that Limon cannot show that he is otherwise qualified because of his workplace violations, the Sixth Circuit has said that "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). Limon has adequately demonstrated that he was otherwise qualified because his evidence shows that he "performed at a level that generally met h[is] employer's objective minimum qualifications." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014).

proximity argument amounts to an assertion that Limon's conversation with Williams somehow immunized Limon from the consequences of violating ordinary and known workplace rules and expectations. Moreover, the facts of this case and the law of the Sixth Circuit do not require the Court to engage in a "proximity alone" or "proximity plus" debate.

First, evidence of close temporal proximity can be relevant to a retaliation claim, but is less significant to a discrimination claim. *See Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 855 (6th Cir. 2013) (noting that the plaintiff's argument that temporal proximity indicated pretext was relevant to the plaintiff's retaliation claim, but it was "less probative with respect to the idea that the decision to terminate Adamov's employment was made on the basis of his national origin"). Moreover, the Sixth Circuit has held that temporal proximity, by itself, cannot support a finding of pretext. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). "Unlike its role in establishing a prima facie case, 'the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.'" *Id.* (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012)); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc) (noting that the EEOC needed "more [than temporal proximity] to reach a jury"). For these reasons, temporal proximity alone cannot carry the day for Limon, especially because MPC had been aware of Limon's sleep issues for several years, and Limon did not reveal anything new in his January 3 meeting with Williams.

Limon's assertion that MPC failed to follow its own disciplinary policy is without merit because the policy itself states that it was not mandatory but constituted only "guidelines and recommendations." He also ignores that Williams and Sparkman were addressing an uncommon situation not contemplated by the disciplinary policy—two violations by an employee within a day of each other. Given that the January 8 and January 10 violations were separate violations, it would

7

have made no sense for MPC to suspend Limon for one day and bring him back only to then terminate him, as Limon suggests MPC should have done. Moreover, Limon fails to present any evidence suggesting that MPC's manner of applying its policy to Limon in these unique circumstances was discriminatory. Finally, the Sixth Circuit has held that "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005). Limon's evidence falls far short of demonstrating pretext.

### III. CONCLUSION

For the foregoing reasons, the Court will grant MPC's motion for summary judgment and dismiss Limon's ADA claims with prejudice.

A separate Order consistent with this Opinion will be entered.


Dated: May 15, 2015                    /s/ Gordon J. Quist
                                       GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE